UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEMETTA BASS,<br>    Plaintiff,<br>    v.<br>николайNANCY A. BERRYHILL,<br>    Defendant. | Case No. 18-cv-07053-DMR<br><br>**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT**<br>Re: Dkt. Nos. 16, 23 |

Plaintiff Demetta Bass moves for summary judgment to reverse the Commissioner of the Social Security Administration's (the "Commissioner's") final administrative decision, which found Bass not disabled and therefore denied her application for benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.* The Commissioner cross-moves to affirm. For the reasons stated below, the court grants in part Bass's motion, denies the Commissioner's cross-motion, and remands this case for further proceedings.

## I. PROCEDURAL HISTORY

Bass filed an application for Supplemental Security Income ("SSI") benefits on November 25, 2014, which was initially denied on August 25, 2015 and again on reconsideration on January 27, 2016. Administrative Record ("A.R.") 411-28, 429-44, 445-48, 452-56, 514-22. On March 3, 2016, Bass filed a request for a hearing before an Administrative Law Judge ("ALJ"). A.R. 457-58. ALJ Arthur Zeidman held a hearing on June 20, 2017. A.R. 375-410.

The ALJ issued a decision finding Bass not disabled. A.R. 56-75. The ALJ determined that Bass has the following severe impairments: obesity, asthma, affective disorder, anxiety disorder, and substance abuse disorder. A.R. 61. He found that Bass retains the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. § 416.967(c), except with the following limitations:

> [S]he can lift and carry 50 pounds occasionally and 25 pounds frequently; she can sit for 6 hours, stand for 6 hours, and walk for 6 hours; she can push or pull as much as she can lift and carry; she can frequently climb ramps, stairs, ladders, ropes, or scaffolds; and she can frequently respond appropriately to supervisors, coworkers, and the public.

A.R. 63-64.

Relying on the opinion of a vocational expert ("VE") who testified that an individual with such an RFC could perform other jobs existing in the economy, including assembler, hand packager, and machine feeder, the ALJ concluded that Ms. Bass is not disabled.

The Appeals Council denied Bass's request for review on September 24, 2018. A.R. 1-7. The ALJ's decision therefore became the Commissioner's final decision. *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1231 (9th Cir. 2011). Bass then filed suit in this court pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a mere scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir.1996) (internal citation omitted). When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citation and quotation marks omitted).

If the evidence reasonably could support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "Finally, the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035,

1038 (9th Cir. 2008) (citations and internal quotation marks omitted).

The court has reviewed the entire record in this case. For the purposes of brevity, this order cites only those facts that are relevant to the court's decision.

**III. ISSUES PRESENTED**

Bass argues that the ALJ erred in (1) failing to find that some of her impairments are severe; (2) weighing the medical opinions; (3) discounting the lay testimony of Cassandra Attaway, Bass's godsister; (4) determining Bass's credibility; (5) assessing her RFC; and (6) eliciting VE testimony. These arguments are addressed in turn.

### A. Step Two Analysis

#### 1. Legal Standard

At step two of the five-step sequential evaluation for disability claims, the ALJ must determine whether the claimant has one or more severe impairments that significantly limit a claimant's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(a)(4)(ii) and (c); 416.920(a)(4)(ii) and (c). "Basic work activities are abilities and aptitudes necessary to do most jobs, including, for example, walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (quotation omitted). The Ninth Circuit has held that "the step-two inquiry is a de minimis screening device to dispose of groundless claims." *Id.* (citation omitted). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual[']s ability to work." *Id.* (quotations omitted). A severe impairment "must be established by objective medical evidence from an acceptable medical source," 20 C.F.R. § 416.921, and the ALJ must "consider the claimant's subjective symptoms, such as pain or fatigue, in determining severity." *Smolen*, 80 F.3d at 1290 (citations omitted). In addition, when assessing a claimant's RFC, an ALJ must consider all of the claimant's medically determinable impairments, both severe and non-severe. 20 C.F.R. §§ 416.920(e), 416.945; *see Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008); *see also* SSR 96-8p, 1996 WL 374184, at *5 ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments [because] limitations due to such a 'not severe' impairment may prevent

3

1  an individual from performing past relevant work or may narrow the range of other work that the
2  individual may still be able to do.").

### 2. Analysis

On step two, the ALJ found that Bass has the following severe impairments: obesity; asthma; affective disorder; anxiety disorder; and substance abuse disorder. A.R. 61. Bass argues that the ALJ erred in neglecting to find that her PTSD, diabetes, back pain, obstructive sleep apnea ("OSA"), and migraines are severe impairments. The ALJ gave reasons for finding that Bass's diabetes and back pain are not severe; however, he did not address the other impairments listed by Bass as part of his step two analysis. The Commissioner argues that any error with respect to the step two analysis is harmless, since the ALJ considered all of Bass's impairments, severe and not severe, in assessing her RFC.

Where the ALJ finds at least one severe impairment at step two, and properly considers all medically determinable impairments at step four, failing to find that any specific impairment is severe is harmless error. *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017); *see also Brown v. Berryhill*, No. 16-cv-04022-EMC, 2017 WL 4417516, at *7 (N.D. Cal. Oct. 4, 2017) (finding that an ALJ's failure to find an impairment was "severe" at step two was harmless because the ALJ incorporated all related restrictions into the RFC assessment). However, if an ALJ does not consider all medically determinable impairments when assessing a claimant's RFC, then an error at step two is not harmless. *See Mercado v. Berryhill*, No. 16-cv-04200-BLF, 2017 WL 4029222, at *6 (N.D. Cal. Sept. 13, 2017).

Here, it is clear that the ALJ did not incorporate limitations based on the impairments identified by Bass. The ALJ discussed only obesity and asthma in assessing Bass's physical RFC; he did not assign limitations based on her back pain or diabetes. *See* A.R. 66. While the ALJ discussed OSA in the context of assessing Bass's credibility, he did not address whether it was a severe impairment nor did he assess any RFC related to OSA. *See* A.R. 66. The ALJ did not discuss PTSD or migraines in the opinion at all, other than to acknowledge Bass's testimony that she experiences both. A.R. 64. Given that the ALJ did not assess any limitations in Bass's RFC based on back pain, diabetes, OSA, PTSD, or migraines, the court must evaluate the ALJ's step two

analysis for error. *See Mercado*, 2017 WL 4029222, at *6.

Each of the identified impairments finds support in the record. Bass first reported experiencing back pain in August 2014. A.R. 855. She stated that it was moderately severe, occurs intermittingly, and is aggravated by standing and walking. A.R. 855. On examination, her healthcare provider found tenderness of the lumbar spine and observed that Bass experienced mild pain with motion. A.R. 857. In October 2014, Bass reported that her lower back pain was getting worse, and that it would reach about 7-8/10 in intensity. A.R. 631. On March 13, 2015, she received an initial X-ray of her lumbar spine that showed no visible abnormality, but an MRI taken five months later showed a minor disc spur complex with moderate facet hypertrophy at L5-S1, causing mild central and right foraminal stenosis. A.R. 790. Bass continued to report back pain to various providers throughout the relevant treatment period. A.R. 17, 23, 29, 33, 99, 700, 1052, 1102. She received a referral for physical therapy in July 2017, and the provider at that time noted that she exhibited decreased strength and range of motion. A.R. 81.

In finding that Bass's back pain is not a severe impairment, the ALJ noted that the 2015 MRI did not reveal significant findings other than at L5-S1 and did not show disc herniation or neural impingement. A.R. 62. He also stated that it was significant that Bass did not receive any treatment other than pain medications. A.R. 62. The ALJ's assessment of Bass's back pain is not well supported. The 2015 MRI showed abnormalities in some parts of Bass's spine and the ALJ did not cite any medical findings to support that Bass's MRI results are inconsistent with her reports of pain. Further, although it is true that Bass used pain medication, she was also referred to physical therapy, potentially indicating a higher need for treatment than reflected by the ALJ. A.R. 81. Notably, the ALJ gave great weight to the opinion of consultative examiner Farah Rana, M.D., who explicitly assessed physical limitations based in part on Bass's reports of back pain. *See* A.R. 779. Given that there are objective medical findings of abnormalities in Bass's spine, findings of back pain by a physician credited by the ALJ, and no evidence that contradicts Bass's pain reports, the ALJ erred in finding that Bass's back pain is not a severe impairment. The error is not harmless because the ALJ did not consider back pain in assessing Bass's RFC, despite crediting a medical opinion that did assess limitations on that basis.

The ALJ also erred in finding that Bass's diabetes is not a severe impairment. He cited one record where Bass denied numbness or burning in her feet, yet the record also contains reports of tingling, numbness, and swelling in her extremities at other times. *See* A.R. 33, 796, 819, 918, 1028, 1043. Further, although the ALJ characterized Bass's diabetes as "adequately controlled" with medication, she reported neuropathy symptoms even while taking gabapentin. A.R. 33. Given that the ALJ's assessment is contradicted by the medical evidence, the court finds that the ALJ erred in failing to consider Bass's diabetes a severe impairment. The error is not harmless because he did not consider Bass's diabetic symptoms in formulating the RFC, including her reports that she has difficulty standing, walking, writing, and performing other activities due to pain and numbness in her limbs.

The ALJ also did not directly address Bass's PTSD, OSA, and migraines in his opinion. However, the court finds that those omissions constitute harmless error. With respect to PTSD, the ALJ addressed Bass's mental conditions as a whole and assessed some restrictions based on her reported symptoms. Bass does not identify any mental symptoms that the ALJ failed to address because of his step two analysis; rather, it seems that the ALJ considered all of Bass's alleged mental symptoms regardless of the specific diagnosis attached to them. Therefore, the court finds that any error the ALJ committed with respect to PTSD on step two is harmless. Next, the record contains little to no evidence that Bass's OSA affects her work-related abilities. Bass herself did not discuss adverse effects from OSA either in her function report or at the hearing. In addition, although Bass's motion cites "daytime fatigue" as an effect of OSA, Bass did not identify any specific limitations in the RFC that the ALJ should have assessed based on that symptom. *See* Mot. at 22. Accordingly, the court finds that any error the ALJ committed in failing to consider OSA a severe impairment is harmless. Finally, the record contains numerous reports that Bass experiences migraines. *See, e.g.*, A.R. 626, 720, 798, 816, 819. However, there is no medical evidence about the extent to which Bass is prevented from working because of them. For example, no opinion addresses the amount of time she would be off-task in a given day due to headaches, nor does Bass argue that the ALJ should have assessed such a limitation. In addition, the most recent record relating to migraines states that Bass's headaches stopped after she stopped taking glipizide, a diabetes medication. *See*

A.R. 1004. Therefore, even if the ALJ erred in omitting migraines as a severe impairment, that error is harmless.

For the reasons stated above, the court finds that the ALJ erred in failing to find that Bass's diabetes and back pain are severe impairments. Those errors are not harmless because the ALJ did not consider them as required in assessing Bass's RFC. Any error the ALJ committed with respect to the other impairments is harmless, as Bass did not identify corresponding errors in the ALJ's RFC. On remand, the ALJ shall revisit the step two analysis and make findings consistent with this order.

### B. Medical Opinions

#### 1. Legal Standard

Courts employ a hierarchy of deference to medical opinions based on the relation of the doctor to the patient. Namely, courts distinguish between three types of physicians: those who treat the claimant ("treating physicians") and two categories of "nontreating physicians," those who examine but do not treat the claimant ("examining physicians") and those who neither examine nor treat the claimant ("non-examining physicians"). *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). A treating physician's opinion is entitled to more weight than an examining physician's opinion, and an examining physician's opinion is entitled to more weight than a non-examining physician's opinion. *Id*.

The Social Security Act tasks the ALJ with determining credibility of medical testimony and resolving conflicting evidence and ambiguities. *Reddick*, 157 F.3d at 722. A treating physician's opinion, while entitled to more weight, is not necessarily conclusive. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (citation omitted). To reject the opinion of an uncontradicted treating physician, an ALJ must provide "clear and convincing reasons." *Lester*, 81 F.3d at 830; *see, e.g.*, *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995) (affirming rejection of examining psychologist's functional assessment which conflicted with his own written report and test results); *see also* 20 C.F.R. § 416.927(d)(2); SSR 96-2p, 1996 WL 374188 (July 2, 1996). If another doctor contradicts a treating physician, the ALJ must provide "specific and legitimate reasons" supported by substantial evidence to discount the treating physician's opinion. *Lester*, 81 F.3d at 830. The

ALJ meets this burden "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick*, 157 F.3d at 725 (citation omitted). "[B]road and vague" reasons do not suffice. *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989). This same standard applies to the rejection of an examining physician's opinion as well. *Lester*, 81 F.3d at 830-31. A non-examining physician's opinion alone cannot constitute substantial evidence to reject the opinion of an examining or treating physician, *Pitzer v. Sullivan*, 908 F.2d 502, 506 n.4 (9th Cir. 1990); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984), though a non-examining physician's opinion may be persuasive when supported by other factors. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (noting that opinion by "non-examining medical expert . . . may constitute substantial evidence when it is consistent with other independent evidence in the record"); *Magallanes*, 881 F.2d at 751-55 (upholding rejection of treating physician's opinion given contradictory laboratory test results, reports from examining physicians, and testimony from claimant). An ALJ "may reject the opinion of a non-examining physician by reference to specific evidence in the medical record." *Sousa*, 143 F.3d at 1244. An opinion that is more consistent with the record as a whole generally carries more persuasiveness. *See* 20 C.F.R. § 416.927(c)(4).

**2.     Opinions on Physical Limitations**

Bass argues that the ALJ erred in discounting the opinions of her treating medical providers with respect to her physical impairments, including asthma, OSA, migraine headaches, diabetes, and back pain. Mot. at 15. However, Bass cites to treatment notes, not medical opinions. None of the treating sources that Bass identifies opined on her work-related functional limitations. *See* 20 C.F.R. § 404.1527(a)(1). While these records are part of the medical evidence, they are not medical opinions that the ALJ was required to individually discuss and weigh.

**3.     Opinions on Mental Limitations**

**i.     Meilin Mehri, Psy.D.**

In July 2014, Bass's primary care provider referred her to Meilin Mehri, Psy.D., at the Tiburcio Vasquez Health Center. The medical evidence contains Dr. Mehri's notes from two meetings with Bass in July and August 2014. Bass told Dr. Mehri that she experienced passive

suicide ideation and had a suicide plan in the past. A.R. 657. Dr. Mehri assessed Bass for suicide risk and assisted in developing a safety plan. A.R. 656. Dr. Mehri evaluated Bass's mental status and found that it was largely within normal limits, but that she had a depressed mood, slow speech, and negative thought content. A.R. 654. She assessed diagnoses of major depressive disorder (recurrent, severe) and alcohol abuse. A.R. 654.

Bass argues that the ALJ erred in failing to discuss or give weight to Dr. Mehri's two medical notes. As the Commissioner points out, the records identified by Bass are treatment records, not a medical source statement. *See* 20 C.F.R. § 404.1527(a)(1). The mental status examination Dr. Mehri performed contains no opinion as to Bass's mental limitations; it simply records Dr. Mehri's observations of Bass's appearance and behavior. Bass does not explain, nor is it obvious, how giving weight to these observations would have impacted the ALJ's RFC assessment. *See Harris v. Berryhill*, 738 F. App'x 529, 530 (9th Cir. 2018) (finding that an ALJ is "not required to discuss evidence that was neither significant nor probative of [a claimant's] functional limitations"). Further, it is clear that the ALJ did consider Dr. Mehri's notes as part of the entire medical record, as he cited them in a discussion of Bass's history of mental treatment. *See* A.R. 66.

The court finds that the ALJ was not required to specifically discuss or give weight to Dr. Mehri's medical notes.

### ii. Gilda Versales, M.D.

On June 30, 2015, Bass began treatment at Pathways to Wellness and met with Gilda Versales, M.D. A.R. 769. Dr. Versales took her medical history and recorded her current symptom reports. A.R. 769-72. She also assessed Bass's functional limitations and noted that Bass was moderately limited in her ability to maintain concentration, persistence, or pace, and mildly limited in her activities of daily living and maintaining social functioning and relationships. A.R. 773. In an updated treatment plan dated October 20, 2016, Dr. Versales wrote that Bass experiences moderate difficulty in maintaining stable housing and attending community programs. A.R. 1164-66. Dr. Versales noted that Bass's current symptoms include irritability, insomnia, anxiety, mood swings, and depressive moods. A.R. 1167. Dr. Versales also completed a checklist referral form indicating that Bass has "[s]eriously significant depression/anxiety." A.R. 1167. The ALJ gave

9

great weight to the functional limitations assessed by Dr. Versales in 2015 but did not discuss the 2016 record.

Bass's argument as to these records is not clear. She does not appear to object to the ALJ giving great weight to the 2015 record. Instead, she seems to contend that the ALJ neglected to consider the 2016 updated report, which she claims shows more serious limitations than the 2015 record standing alone. *See* Mot. at 14. However, contrary to Bass's assertion, the 2016 report does not appear to contain an assessment of her functional limitations. For example, the report reflects that Bass experiences difficulty in maintaining stable housing but does not explain whether and to what extent that issue is due to her mental functioning rather than to other factors. A.R. 1164. In addition, Bass does not explain how consideration of the 2016 report would have changed the ALJ's RFC assessment. Under these circumstances, the court cannot say the ALJ erred in failing to specifically discuss the 2016 record.

### iii. Ted Aames, Ph.D., and Kari Jennings-Parriott, LCSW

Kari Jennings-Parriott, LCSW, provided mental health treatment to Bass starting in September 2016. Jennings-Parriott completed a mental health impairment questionnaire for Bass on March 26, 2017. A.R. 1175-81. The medical source statement was co-signed by Ted Aames, a clinical psychologist. A.R. 1175-81. The statement reports that Bass was diagnosed with PTSD, panic disorder, and trichotillomania. A.R. 1175. It notes that Bass is "engaged in treatment and motivated to reduce [her symptoms]" but "still struggles daily to merge [symptoms] associated [with] her multiple diagnoses." A.R. 1175. It indicates that Bass has marked and extreme limitations in various areas of mental functioning, including her ability to interact with others; maintain concentration, persistence or pace; and adapt or manage herself. A.R. 1177-78. For example, it contains the opinion that Bass is extremely limited in her ability to cooperate with others; handle conflict; ignore or avoid distractions; sustain an ordinary routine and regular attendance at work; work a full day without needing more than the allotted number or length of rest periods; adapt to changes; and manage psychologically-based symptoms. A.R. 1177-78. It goes on to opine that Bass would likely be absent from work four or more days per month as a result of her impairments and would be off-task more than 30% of a normal workday. A.R. 1178.

The ALJ assigned little weight to the source statement written by Jennings-Parriott and Dr. Aames. He gave three reasons to discount this record, including that (1) Dr. Aames' treatment relationship with Bass was not clear; (2) the source statement was "not entirely consistent with the behavioral health records' depiction" of Bass's mental functioning; and (3) the severity of Bass's various limitations is belied by Jennings-Parriot's own treatment notes. A.R. 67.

With respect to the first reason, the Commissioner argues that there is no evidence in the record that Dr. Aames personally treated Bass and therefore his opinion cannot be considered a treating physician opinion. Bass asserts that Dr. Aames oversaw Bass's treatment, and his position as a supervisor in Bass's treatment team qualifies his opinion as a treating physician statement. The difference is material because if Dr. Aames is considered a treating physician, the ALJ was required to give specific and legitimate reasons supported by substantial evidence to reject it. *Lester*, 81 F.3d at 830. If Dr. Aames is not a treating physician, then the ALJ would only be required to give germane reasons to reject the opinion of Jennings-Parriott. *Kelly*, 471 F. App'x at 676 (quoting *Turner*, 613 F.3d at 1223-24).

Under the regulations, a "treating source" is an "acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you." 20 C.F.R. § 416.927(a)(2). In *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030 (9th Cir. 2003), cited by Bass, the Ninth Circuit held that a supervising physician may be considered a treating source if the claimant sees the source with a "frequency consistent with accepted medical practice for the type of treatment . . . required for your medical conditions." *Benton*, 331 F.3d at 1036 (quoting 20 C.F.R. § 416.927(a)(2)). Thus, in *Benton*, the court found that a supervising psychiatrist could be considered a treating source even though he had only seen the claimant once, since the evidence established that he had "continued to oversee her care." *Id.* at 1037. The *Benton* court noted that the regulations do not prohibit a supervising physician from completing an RFC assessment on behalf of his team, even if the physician has little direct experience with the claimant. *Id.* at 1039. The court remanded the issue to the ALJ to consider whether the psychiatrist saw the claimant "with a frequency consistent with accepted medical practice for this type of treatment." *Id.*

11

*Benton* is distinguishable from the present case. There, the evidence established that the supervising psychiatrist had seen the claimant personally, managed her medications, and "consulted regularly with her treating therapists." *Benton*, 331 F.3d at 1033. In this case, by contrast, nothing in the record even mentions Dr. Aames, aside from his signature line on the Lifelong source statement. There is no evidence that Dr. Aames ever personally met Bass, much less treated her, or that he consulted with Jennings-Parriott about Bass. Therefore, there is no basis in the record for Bass's unsubstantiated statement that Dr. Aames was the "Lifelong psychologist overseeing [Bass's] treatment." *See* Mot. at 12. Accordingly, the ALJ was not required to consider Dr. Aames as a treating source. However, since the statement relays the opinions of LCSW Jennings-Parriott, who is an "other source" under 20 C.F.R. § 404.1527(f), the ALJ was required to provide germane reasons to discount the assessment. *See Kelly*, 471 F. App'x at 676. The court will therefore apply the "germane reason" test to the ALJ's remaining reasons.

The ALJ's second reason to discount this medical source statement was that it was "not entirely consistent with the behavioral health records' depiction of [Bass's] stable mental states, lack of significant interactive issues, and objectively unremarkable cognitive findings." A.R. 67. First, although the medical evidence reflects some normal mental status examinations, there are also records from multiple providers that indicate more serious symptoms. *See, e.g.*, A.R. 187 (opining that Bass's reported symptoms may indicate PTSD); 205 (reflecting Bass's history of insomnia, nightmares, flashbacks, intrusive thoughts, irritability, hypervigilance, and hyperarousal); 648 (recording a PhQ9 score of 18, indicating moderately severe depression), 651 (observing Bass's depressed mood and slow speech), 657 (noting Bass's history of self-harm and passive suicide ideation); 678 (stating that Bass's depressive symptoms are chronic and poorly controlled), 772 (observing Bass's depressed mood and tearful affect). The ALJ did not explain why the records showing negative mental states were less persuasive, and the existence of some normal mental status exams is not enough on its own to discount Jennings-Parriott's opinion. *See Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) (recognizing the "[c]ycles of improvement and debilitating symptoms are a common occurrence" and cautioning that it is error for an ALJ to rely on a "few isolated instances of improvement" to decide that a claimant is capable of working). Second, with

respect to Bass's "interactive issues," the ALJ did not discuss or mention the numerous reports of altercations between Bass and other people. *See, e.g.*, A.R. 99, 111, 125, 181, 183, 186, 203, 1114. For example, in a confrontation with her sister, Bass punched a wall and hurt her hand. A.R. 125. Bass reports that these altercations often involve her alter ego, Dominique, who is aggressive toward others in order to protect her. A.R. 20, 183, 187, 1099, 1102. When her symptoms are exacerbated, Bass pulls her hair and eyelashes out. A.R. 1105, 1023. The ALJ did not explain why these records are not probative of Bass's interactive issues. Finally, it is unclear what the ALJ meant by "objectively unremarkable cognitive findings," because he did not cite any specific records to illustrate such findings. It is not clear, for example, whether the "cognitive findings" to which the ALJ refers are the same as the mental status examinations upon which he previously relied, and which the court already addressed above. In sum, the ALJ's characterization of the medical evidence is not supported in the record and does not constitute a germane reason to discount this medical source statement.

Finally, the ALJ stated that the severity of the limitations contained in the medical source statement are not consistent with Jennings-Parriott's own progress notes, which contain "only somewhat abnormal mental status examination findings and lack of apparent difficulties with [Bass's] mood stability, behavior around clinicians, and cognition." A.R. 67. The progress notes themselves do not support the ALJ's characterization of them. For example, during Jennings-Parriott's initial visit with Bass on September 29, 2016, she noted that Bass had a depressed/anxious mood, a labile affect, a circumstantial and tangential thought process, minimal insight, and moderately impaired judgment. A.R. 1122. Mental screening tools indicated that Bass had severe depression and anxiety. A.R. 1122. On October 31, 2016, Jennings-Parriott wrote that Bass exhibited "minimal progress," and noted her pressured speech, slumped posture, and intermittent eye contact. A.R. 1114. In her progress notes dated January 23, 2017, Jennings-Parriott noted that Bass's appearance was disheveled, her posture was slumped, and her eye contact was intermittent. A.R. 1096. She wrote that Bass exhibited only partial insight, and that she had a severely impaired ability to make reasonable decisions. A.R. 1096. On April 5, 2017, Bass reported that her depression was becoming worse, and she was increasingly more tearful and highly emotional. A.R.

13

1093. Jennings-Parriott observed that Bass had a slumped posture, avoidant eye contact, a depressed mood, a flat affect, and partial insight. A.R. 1093. On April 19, 2017, Bass reported that she had "sporadic blackout periods where she can not [*sic*] remember hours of her day," which Jennings-Parriott attributed to trauma. A.R. 1090. Separate from the blackout periods, Bass stated that her alter ego Dominique sometimes comes out and "tak[es] care of me," and that she has no control over her actions during those times. A.R. 1090. Jennings-Parriott observed that Bass appeared tense and seemed to be experiencing depersonalizations and depressive preoccupations/ruminations. A.R. 1090. She administered the PhQ9, and Bass's responses indicated moderately severe depression. A.R. 1091. The PCL-C showed that Bass was symptomatic for PTSD. A.R. 1091. Contrary to the ALJ's finding that the mental status exams described in Jennings-Parriott's progress notes do not support the limitations set forth in the medical source statement, the progress notes repeatedly reflect issues with Bass's cognition, thought process, insight, and judgment. A.R. 27, 103, 111, 118, 125, 1100, 1102, 1105, 1090, 1093, 1096, 1112, 1114. The mental status exams also record mood instability, with Bass consistently presenting as depressed, anxious, or both. A.R. 1090, 1093, 1096, 1114. Therefore, the ALJ's characterization of Jennings-Parriott's progress notes does not accurately summarize her observations of Bass's mental state.

In sum, the ALJ's characterization of the medical evidence and of Jennings-Parriott's treatment notes are not supported in the record. Under these circumstances, the court finds that the ALJ did not offer germane reasons to discount the opinion of Jennings-Parriott.

### iv. Van Nguyen, Pharm. D.

Bass began seeing Van Nguyen, M.D. at Pathways to Wellness in May 2017. A.R. 187-88. Dr. Nguyen managed Bass's medication regime. On September 21, 2017, Dr. Nguyen performed a medical provider's assessment. A.R. 205-09. He reviewed Bass's psychiatric history and reports of current symptoms. A.R. 205. Bass told Dr. Nguyen that she had been taking her medication as prescribed and that it reduced her nightmares and difficulty sleeping. A.R. 205. However, she reported that many of her symptoms continued, including "severe anhedonia," difficult concentration, recurrent flashbacks, intrusive thoughts, social avoidance, irritability, hypervigilance, hyperarousal, and panic attacks. A.R. 205. Dr. Nguyen wrote that she had a psychiatric history

significant for major depressive disorder and insomnia. A.R. 208. He also provided an assessment of Bass's functional limitations, writing that Bass has marked restriction in activities of daily living and maintaining concentration, persistence or pace, and extreme difficulties in maintaining social functioning and relationships. A.R. 208. Dr. Nguyen's assessment indicated that Bass should not be transitioned to a lower level of care at that time because she exhibited difficulties in activities of daily living and social relationships. A.R. 209.

Bass argues that the ALJ committed reversible error by failing to assign weight to Dr. Nguyen's September 2017 assessment. However, Dr. Nguyen's 2017 assessment was not before the ALJ at the time of his decision; rather, Bass submitted these records to the Appeals Counsel as part of her request for review. A.R. 1-7. As both Bass and the Commissioner acknowledge, this court can consider evidence that was submitted for the first time to the Appeals Council. *See Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012) ("[W]hen the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence."). An ALJ's failure to address records that were not before him is not automatic cause for remand; rather, the court must consider the medical record as a whole, including the new evidence, in determining whether the ALJ erred in denying benefits. *See id.* Therefore, the court rejects Bass's argument that the ALJ erred by not addressing the new records in the first instance. However, Dr. Nguyen treated Bass for several months and provided a functional assessment with diagnostic impressions and findings that explain the limitations he assessed. In reviewing the medical record as a whole, the court finds that Dr. Nguyen's assessment may be material to the ALJ's ultimate determination regarding disability. For example, the ALJ cited Bass's positive response to medication as a reason to discredit Bass's testimony. A.R. 66. However, Dr. Nguyen's records reflect that medication relieved some of Bass's symptoms, including insomnia and nightmares, while other symptoms such as irritability and social difficulties continued. A.R. 205. Since Dr. Nguyen managed Bass's psychiatric medication regime, his opinion as to the effectiveness of medication on Bass's conditions is highly probative.

On remand, the ALJ shall consider and assign weight to Dr. Nguyen's medical opinion in a

15

manner consistent with the regulations and this order.

### v. Philip Sack, M.D.

On July 29, 2015, consultative examiner Philip Sack, M.D. performed a psychiatric evaluation. A.R. 780-81. He observed that Bass was poorly groomed, but alert, oriented, and cooperative. A.R. 780. Her mood appeared to be depressed and anxious, and she had a sad, anxious, conflicted, and flat affect. A.R. 780-81. Dr. Sack wrote that Bass's thought content seemed concrete but goal directed. A.R. 780. He opined that her insight and judgment were "fair to poor." A.R. 780-81. He diagnosed her with PTSD, generalized anxiety disorder, major depressive disorder, and polysubstance dependence. A.R. 781. Dr. Sack's functional assessment stated that Bass's work-related capacity was largely intact, including her ability to relate to others, understand and follow simple instructions, maintain appropriate levels of concentration, persistence, and pace, and manage changes in a routine workplace situation. A.R. 781. However, he noted that her ability to maintain adequate persistence to perform complex tasks seems mildly to moderately impaired, as does her ability to tolerate the usual stress and pressures associated with day to day work activity. A.R. 781.

Bass argues that the ALJ erred in assigning great weight to Dr. Sack's opinion. The ALJ did not separately discuss Dr. Sack's opinion but rather addressed it along with the other opinions to which the ALJ gave great weight, including the findings of the state agency psychiatric consultants. A.R. 67. The ALJ stated that these opinions were consistent with "the claimant's stable mental states and improved condition as achieved through her therapy sessions and use of medication." A.R. 67. He also found that the medical records "show no significant behavioral problems, aside from the claimant's self-reported anger issues, and no objective indications of significant cognitive deficits." A.R. 67.

As discussed above with respect to Jennings-Parriott's source statement, the ALJ's finding that Bass has "stable mental states" improperly discounts records showing more severe symptoms without explaining why those records are not probative of Bass's overall functioning. The ALJ's statement that the medical evidence shows "no significant behavioral problems" is also unsupported by the record, as the ALJ failed to address records to that specifically describe Bass's interpersonal conflicts. With respect to his conclusion that Bass improved on medication, there is material

16

evidence in the record that medication has not addressed all of Bass's mental impairments, including Dr. Nguyen's 2017 statement. Because the ALJ's reasons for crediting Dr. Sack's opinion are the same reasons he gave for discounting other evidence in the record, and the court already found that these reasons are not supported by the record, the court concludes that the ALJ erred in assigning great weight to Dr. Sack's opinion.

On remand, the ALJ shall reconsider all of the medical opinions in the record in a manner consistent with this opinion.

### C. RFC

Bass argues that the ALJ erred in assessing both her mental and physical RFC. In evaluating the ALJ's step two analysis, the court found harmless error in the ALJ's failure to consider OSA and migraines to be severe impairments; accordingly, Bass's argument that he failed to assess RFC relating to those impairments is moot. Regarding asthma, substantial evidence supports the ALJ's conclusion that this condition does not warrant a more restrictive RFC. Although the record contains evidence that Bass suffers from that condition, she also reported that she takes medication for it and there is no indication that the medication is ineffective in controlling her symptoms. *See* A.R. 922, 929.

However, the court concluded above that the ALJ erred in finding that back pain and diabetes are not severe impairments. The error was not harmless because the ALJ failed to discuss those impairments when he assessed Bass's physical RFC. The court also found that the ALJ erred in discounting Jennings-Parriott's source statement about Bass's mental impairments. That error was not harmless because crediting the statement could have resulted in more restrictive mental RFC.

On remand, the ALJ shall revisit his RFC assessment in light of the court's rulings on the step two analysis and medical opinions.

### D. Remaining Arguments

Bass also argues that the ALJ erred in discounting the lay testimony of Attaway, Bass's godsister; determining Bass's credibility; and eliciting VE testimony. As discussed above, the ALJ erred in the step two analysis and in weighing the medical opinions. These errors were not harmless because they could impact the ALJ's determination on other steps of the analysis. For example, if

17

he assigns different weight to the medical opinions, he may find that the testimony of Bass and/or Attaway is more consistent with the medical evidence.  Similarly, if the ALJ assesses a different RFC, he might pose different hypothetical questions to the VE, rendering Bass's arguments on that point moot.

On remand, the ALJ should revisit these issues and make findings consistent with this order and the regulations.

## IV. CONCLUSION

For the foregoing reasons, the court grants in part Bass's motion for summary judgment, denies the Commissioner's cross-motion, and remands this case for further proceedings.

**IT IS SO ORDERED.**

Dated: March 31, 2020

Donna M. Ryu
United States Magistrate Judge